ORIGINAL

James H. Fosbinder #7070
IVEY FOSBINDER FOSBINDER LLLC
A LIMITED LIABILITY LAW COMPANY
1883 Mill Street
Wailuku, Hawaii  96793
Telephone:  (808)242-4956
Facsimile:  (808)249-0668
Email: jfosbinder@iff-law.com

Attorneys for Plaintiff
RICHARD LEONARD RADFORD

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 10 2011

at 4 o'clock and 30 min. P M
SUE BEITIA, CLERK

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RICHARD LEONARD RADFORD;<br><br>Plaintiff,<br><br>vs.<br><br>LONG BEACH MORTGAGE COMPANY;<br>LONG BEACH SECURITIES CORP.;<br>DEUTSCHE BANK NATIONAL TRUST<br>COMPANY, as Trustee for Long<br>Beach Mortgage Loan Trust 2006-<br>WL1; WASHINGTON MUTUAL, now<br>known as J.P. MORGAN CHASE BANK<br>NATIONAL ASSOCIATION; J.P.<br>MORGAN CHASE BANK NATIONAL<br>ASSOCIATION; and JOHN DOES 1-<br>50, inclusive;<br><br>Defendants. | CIVIL NO. CV11 00018 JMS KSC<br><br>COMPLAINT; DEMAND FOR JURY<br>TRIAL; SUMMONS |

### COMPLAINT

Plaintiff RICHARD LEONARD RADFORD (Plaintiff), by and

through his attorney, JAMES H. FOSBINDER, of IVEY,

1

FOSBINDER, FOSBINDER LLLC, a limited liability law company,
brings the following Complaint and alleges as follows:

## JURISDICTION AND VENUE

1.   Jurisdiction arises under 28 U.S.C. § 1331
(Federal Question Jurisdiction); the Clayton Anti-Trust
Act, 15 U.S.C. § 12, et seq.; the Federal Truth in Lending
Act (hereinafter "TILA"), 15 U.S.C. § 1601, et seq., and
the Act's corresponding Regulation Z (24 C.F.R. Part
3600.1-3500.17) and Regulation X (24 C.F.R. Part 3500); the
Real Estate Settlement Procedures Act (hereinafter
"RESPA"), 12 U.S.C. 2601, et seq.; Home Ownership Equity
Protection Act (HOEPA), 15 U.S.C. 1639 et seq.; Title 24
CFR, Regulation X, Part 3500; the Equal Credit Opportunity
Act (Reg. B, 12 C.F.R. 202); Fair Credit Reporting Act, 15
U.S.C. 1681, et seq.; Fair Debt Collection Procedures Act
(FDCPA), 15 U.S.C. Sec. 1692-1692p; and 18 U.S.C. §§ 1341,
1343.

2.   Jurisdiction also arises under 28 U.S.C. § 1332
(Diversity Jurisdiction).

3.   This Court has supplemental jurisdiction over
this action under 28 U.S.C. § 1367(a) because state law
claims are so related to the federal claims that they form
part of the same case or controversy. These claims all
arise out of the same controversy and sequence of events.

This Court has jurisdiction over state claims asserted under Hawaii Revised Statutes (hereinafter "HRS") by virtue of pendent jurisdiction.

4.    Venue is proper in the United States District Court for the District of Hawaii, pursuant to 28 U.S.C. § 1391, in that Defendants systematically conduct and transact substantial business in this State and District as licensed banks and corporations organized and/or operating in the State of Hawaii, the causes of action occurred in this District, and Plaintiff resides in this District.

## PARTIES

5.    Plaintiff, RICHARD LEONARD RADFORD is and was at all times relevant over the age of eighteen, a resident of the County of Maui, State of Hawaii, and is a consumer in regards to credit transactions.

6.    Defendant LONG BEACH MORTGAGE COMPANY, whose corporate headquarters are located in Anaheim, California and at all times relevant hereto was a National Banking Association and a Delaware corporation, holding mortgage loans secured by real estate property in the State of Hawaii.

7.    Defendant LONG BEACH SECURITIES CORPORATION, is a subsidiary of LONG BEACH MORTGAGE COMPANY, and at all times relevant hereto was the depositor of loans into trusts.

8.   Defendant, DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Long Beach Mortgage Loan Trust 2006-WL1, whose principal place of business is Santa Ana, California, at all times relevant hereto was a National Banking Association holding mortgage loans secured by real estate property and conducting business within the State of Hawaii.

9.   Defendant, WASHINGTON MUTUAL, now known as J.P. MORGAN CHASE BANK NATIONAL ASSOCIATION, whose corporate headquarters are located in New York, at all times relevant hereto was a National Banking Association holding mortgage loans secured by real estate property and conducting business within the State of Hawaii.

10.   Defendant, J.P. MORGAN CHASE BANK NATIONAL ASSOCIATION, whose corporate headquarters are located in New York, at all times relevant hereto, was a National Banking Association holding mortgage loans secured by real estate property and conducting business within the State of Hawaii.

11.   Defendant LONG BEACH MORTGAGE COMPANY, has business in the State of Hawaii, was the lender under Mortgage dated August 22, 2005, in the amount of $749,999.00, which was recorded in the State of Hawaii

Bureau of Conveyances on August 30, 2005, Document No:
2005-172543(Mortgage).

12.   The acts and/or omissions of Defendants, and each
of them, alleged in this Complaint, were performed by their
agents, officers, affiliates and/or employees within the
scope of their actual or apparent authority which were
known and/or should have been known to Defendants and/or
their predecessors in interest and/or are imputed to
Defendants.

13.   DOES Defendants 1-50, inclusive, are various
individuals, partnerships, associations, corporations, and
other entities claiming any legal right, title, estate,
lien, or interest in the Subject Property, as described
adverse to Plaintiff's interests. Plaintiff will make a
good faith effort to determine the true names and
identities of these parties. Plaintiff reserve the right to
amend this Complaint to add such parties as their true
identities and capacities are ascertained through discovery
or otherwise.

14.   Additionally, Defendants operate mortgage
originating and mortgage servicing businesses that solicit,
cater, and service millions of home loans annually.  Based
on understanding and belief, Defendants and their agents,
officers, affiliates and/or employees have operated as a

common enterprise while engaging in the unlawful acts and
practices alleged below. Because Defendants have operated
as a common enterprise, each of them is jointly and
severally liable for the acts and practices alleged below.

## INTRODUCTION

15.   Historically, mortgage loans have made by lenders
within the local marketplace. Banks made money by charging
more interest than they paid to depositors. If the bank
made bad loans, the bank lost income. For this reason,
banks made serious investigation of the borrower's ability
to pay back the loan. When a bank approved a loan
application, it meant something; it meant it was likely the
borrower *could* and would repay the loan. Loans often
remained with the original lender for the lifetime of the
loan.

16.   Although speculation in real estate existed,
profits were generally made from appreciation of land
values over time largely because of the checks and balances
of the loan origination process itself and also due to the
demands of the statutory recordation requirements. The only
way to aggressively buy and sell an interest in mortgage-
related assets on a frequent basis was to buy stock in
corporations that were set up to invest in real estate.
Most important, it was almost impossible to invest, in a

speculative way, in single-family homes. You could invest

in the stocks of companies that built single-family homes,

or in the stock of lenders that financed home loans, but

that was about it. Day trading in securities based on real

property did not exist, and the securitization of

residential mortgages was non-existent.

17.   Transactions in real property such as deeds,

mortgages, and assignments of mortgage were recorded in the

Hawaii Bureau of Conveyances and/or with the Assistant

Registrar of the Land Court. If a mortgage was assigned to

a new mortgagee, that assignment was recorded and therefore

was publicly available for review.

18.   Another step – securitization – of a pool of

mortgages is complicated, and the process is (or should be)

governed by the laws of the jurisdiction in which the

securitization takes place. The early mortgage

securitization contracts were designed to satisfy state and

federal laws, such as the Uniform Commercial Code

(governing "secured" transactions), and state trust law

(packaged loans were often put into trusts to allegedly

offered protections that appealed to investors).

19.   Securitizing a mortgage loan is labor-intensive:

The promissory note had to be endorsed by the originator

and other parties before it could be placed into the trust,

and the mortgage had to be assigned to the note-holder. Generally, this process must be completed within 90 days of a trust's "closing." Most mortgage-backed securities are similar to bonds, most being issued by U.S. government-sponsored Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation (Freddie Mac).

20.   With the securitization of mortgages, investors could wager on the failure of mortgages. When interest rates rose, these mortgage-backed securities (similar to bonds) fell in value; conversely, when interest rates fell, the value of the mortgage backed security rose.

21.   If an investor was privy to information that a good number of mortgages in a pool would fail, or that the mortgages exceeded the value of the collateral; they could bet these mortgage-backed securities would be worth less in the future. Add to this the leverage available through the options, or futures markets, and an institution could gamble on millions of dollars of mortgages with very little investment. These highly leveraged "derivatives" enabled investors to capitalize on mortgages being worth more, or worth less, in the short term without holding the underlying note or mortgage.

22.   Hence, a banking institution could "insure" itself against losses in the underlying mortgages by

betting that a number of the mortgages it underwrote, would fail. Talk about inside information. Making the deal even sweeter for the banks, and originators of the loans; most of the mortgages had already been sold via MERS, into an investment pool where the actual investors were sold a security that was over-inflated in value and quality.

23. Most institutions holding subprime mortgages required mortgage insurance on the loans, sometimes insuring against failure 30-times over. They stood to gain more if a borrower defaulted than if he performed fully; hence, there was not much of an incentive to modify or refinance loans for borrowers who had fallen on tough times – despite federal government programs paying lending institutions to do that very thing.

24. For those loans that were insured against default – what happened to the insurance money? Has the foreclosing lender been paid once by the insurance company (financed by a federal bailout of insurance giant AIG and others) and seeks to be paid twice by foreclosing on the real property and selling it? If the foreclosing lender has already been paid off, then is the proper party in interest the insurer?

25. Attorney Generals from all 50 states are investigating the poor record keeping by banks and the servicers (companies that collect mortgage payments). The

Federal Reserve is investigating whether mortgage companies have cut corners in the foreclosure process, using "robo-signers" to sign thousands of mortgage assignments and foreclosure documents without having made the legal investigation required to execute such documents.

26.   Many anti-trust claims involve esoteric mathematical analysis of claimed price manipulation by companies controlling as little as 10 percent of an industry in relatively small area. Complex math is not necessary in this case. What the mortgage industry did was to turn poker in the back of the neighborhood bar, where there were no sharks and everyone knew each other and the pace was leisurely, into Monte Carlo, Las Vegas and internet gambling all rolled into one. As a result, the real property markets were destabilized; banks made fabulous income on fees and a million families will lose their homes to foreclosure.

27.   What justice demands today is that the borrowers -- and the investors -- in the mortgages have an opportunity to work through this mess of the securitization of mortgages and come to a resolution that is best for both parties, and additionally, the public at large.  Plaintiff requests the opportunity to work with the actual investors of the mortgages, which would be a question of fact that

can only be resolved by an evidentiary hearing into who is the actual Note Holder, how much is owed, to whom, and, whether any third-party payments have been made on Plaintiff's behalf, by insurance, the government, or otherwise.

## STATEMENT OF FACTS

28.   Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

29.   Plaintiff entered into a loan transaction to finance the subject property at 2824 Ohina Street, Kihei, Hawaii, TMK No. (2) 3-9-037-004 (Property).

30.   Plaintiff executed an Fixed/Adjustable Rate Rider on August 22, 2005 (Note).  At the time of the closing the Note was secured by a Mortgage affecting the Property.

31.   Plaintiff placed his trust and confidence in Defendants and each of them, to properly qualify him for the loan and to provide him with the most favorable loan program and loan terms and felt Defendants would look out for his best interest in meeting his mortgage needs.

32.   Plaintiff followed all instructions of Defendants and submitted all documentation requested by said Defendants. Plaintiff felt that Defendants had a fiduciary

obligation to him to protect his interests and maintain his privacy.

33.   Defendants required an appraisal of Plaintiff's property as part of the loan application process which Plaintiff paid for in the closing costs.   Plaintiff relied upon the accuracy of the Defendants' appraisal in making his decision to pledge his Property as collateral.

34.   Based upon Defendants' failure to provide any other necessary documents and make required disclosures so that Plaintiff could make a fully informed decision, Plaintiff was lured into accepting and executing a Mortgage and Note resulting in financial benefit to Defendants and each of them, and to the detriment of Plaintiff, substantially increasing the likelihood that Plaintiff would default on the Mortgage and Note.

35.   Based on information and belief, Plaintiff was not provided with time to review the loan documents prior to the loan closing and/or signing of the mortgage documents.

36.   Based on information and belief, Plaintiff was not afforded the opportunity to have his legal counsel review the detailed documents.

37.   Based on information and belief, Defendants failed to provide Plaintiff with an initial truth in

lending statement and a Good Faith Estimate within three days of the application as required by law.

38. Based on information and belief, Defendants failed to provide timely notice of various other legally required disclosures concerning said loan application and loan, including, but not limited to, the final truth in lending disclosures, the HUD settlement statement, and notification of other consumer rights of Plaintiff.

39. Due to the lack of the above-referenced disclosures, among others, Plaintiff did not understand the true terms of the loan being proposed, and was unable to compare the loan with loan terms from other lenders, because Defendants did not explain, and/or concealed the true loan terms from Plaintiff.

40. Based on information and belief, Defendants targeted inappropriate or excessively expensive loans to persons who were not financially sophisticated and were otherwise vulnerable to abusive practices.

41. Based on information and belief, Defendants apparently used a no-income, no-asset income product for approval that was based on the alleged value of the collateral without considering the Plaintiff's ability to sustain the future payments of the loan.

42.   Under the Truth in Lending Act (TILA), 15 U.S.C. §§ 1661-1666j, Defendants failed to provide Plaintiff with a notice of the right to cancel, an accurate payment schedule, disclose the interest rate, provide a fully executed and dated loan application, provide a Good Faith Estimate (GFE), a consumer handbook on mortgages, disclose that Plaintiff could obtain insurance with a vendor of his choice and not have to pay higher priced premiums to a provider of lender's choice, and otherwise accurately disclose the purported legal obligation of the parties.

43.   Under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. sections 2601-2617, based on information and belief, Defendants failed to disclose all affiliated business arrangements, that they were giving the broker hidden fees for the referral of settlement business, the HUD-1 settlement statement at closing, and that they could not charge fees in excess of the reasonable value of goods and services provided.

44.   Based on information and belief, Defendants failed to properly qualify Plaintiff as being able to afford the loan payments amortized over the life of the loan.

45.   Based on information and belief, Defendants and each of them, failed to inform Plaintiff and explain in any

meaningful way that Plaintiff could compare terms and/or
might qualify for a better loan program offered by
Defendants or its competitors.

46.   Based on information and belief, Defendants
failed to disclose and/or deliberately concealed
Plaintiff's consumer rights, including but not limited to;
the right of rescission and/or cancellation of the loan
transaction prior to closing and recordation of the
Mortgage.

47.   Defendants failed to inform Plaintiff that by
failing to follow generally accepted underwriting
guidelines in qualifying Plaintiff for the loan that it was
likely that Plaintiff would default and lose his home.

48.   Based upon information and belief, Defendants,
and each of them, failed to inform and explain to Plaintiff
that they intended to securitize and sell the Note and/or
Mortgage and/or portions thereof to other lenders, loan
servicers, and/or investors.

49.   Defendants, and each of them, failed to inform
and explain to Plaintiff that they would disclose
confidential personal and financial information to other
banks or lending institutions or investors who sought to
purchase bundled loans that had been securitized and sold

as investments and otherwise failed to provide Plaintiff with a required opt-out notice.

50.   Based on information and belief, Defendants, and each of them, bought or sold highly leveraged instruments in the futures, or options market, these trades were in direct conflict of Plaintiff's interests.

51.   Based on information and belief, Defendants, and each of them, actually gambled on the failure of Plaintiff, the loss of his home, and, the depression of the housing market.

52.   Based on information and belief, Defendants, and each of them, did profit from the highly leveraged instruments which were/are in conflict of Plaintiff's interest and the housing market in whole.

53.   Based on information and belief, the Defendants, and each of them, as a whole, have operated as a common enterprise while engaging in the acts and/or omissions causing harm to the Plaintiff and were known, and/or should have been known, to all Defendants and/or their successors, or predecessors in interest, and are imputed to all Defendants jointly and severally.

54.   Plaintiff made payments on said loan from his monthly income and from savings and from cash advances on credit cards, and experienced significant financial

hardship due to having to pay for a loan that he was not properly qualified for under usual and generally accepted underwriting guidelines.

55.   Based on information and belief, Defendants, and each of them, intentionally and/or recklessly failed to disclose and/or concealed various information and documents from Plaintiff and knowingly placed Plaintiff in a loan he could not afford.

56.   Plaintiff experienced loan distress and asked Defendants for assistance in modifying and/or refinancing said loan.

57.   Based on information and belief, Plaintiff was denied a loan modification although Defendants received government incentives to promote and procure such a mortgage modification.

58.   Based on information and belief, during the life of the loan, Defendants and/or their predecessors in interest sold and/or transferred the Note and Mortgage without proper endorsement or assignments, resulting in Defendants not having the right and interest to foreclose upon the subject property.

59.   Defendants, and each of them, failed to properly assign the Mortgage and Note within a timely manner as demonstrated in the Assignment of Mortgage and Note, dated

June 12, 2008 and recorded with the Bureau of Conveyances
on June 16, 2008.

60.   Based on information and belief, Defendants
failed to provide Plaintiff with legally sufficient and
timely notice of the intent to foreclosure.

61.   Violations of Federal and State statutes, alleged
herein, bar Defendants from filing, causing to be filed,
and/or conducting ejectment proceedings against Plaintiff.
Alternatively, Plaintiff's defense, claim and right,
including but not limited to the right to recovery of
damages, injunction and any other remedy available under
State, Federal, and/or common law, under the Mortgage and
Note bar Defendants from taking any action, including
filing, causing to be filed, and/or conducting ejectment
proceedings against Plaintiff.

## CLAIM I
## VIOLATIONS OF THE CLAYTON ANTI-TRUST ACT

62.   Plaintiff incorporates each and every allegation
contained in the preceding paragraphs of this Complaint as
if fully set forth herein.

63.   The conduct of Defendants as described more fully
hereinabove violates the Clayton Anti-Trust Act, 15 U.S.C.
§ 12 et seq.

64.   Defendants have engaged in predatory conduct or anticompetitive conduct in an attempt to monopolize the mortgage lending and servicing market. Defendants intended at all times relevant herein to control mortgage lending prices and practices and/or to destroy competition with respect to this segment of commerce.

65.   Defendants inflated the real estate market in an effort to create and sell subprime mortgages. They sold over-leveraged, highly inflated loans to the Plaintiff. Defendants sold these fraudulent securities to investors and participated in a ratings scheme to fraudulently rate these securities as safer than they truly were.

66.   Defendants and/or entities under their enterprise, took positions in the futures, or options, markets whereby Defendants sought to profit, and did profit, from the collapse of the real estate market, and, benefited from the foreclosure of numerous mortgages that Defendants originated, serviced, or controlled.

67.   The Defendants' acts worked to create the collapse of the mortgage market, which in turn created an economic collapse unprecedented since the Great Depression. Plaintiff, like millions of Americans, experienced a severe decline in his income, which resulted in Plaintiff being unable to pay his mortgage payments and suffering a decline

in his credit rating causing him to be unable to secure refinancing, which is just as Defendants planned.

68.   As a direct and proximate result of the unlawful conduct of Defendants, and each of them, in monopolizing and/or attempting to monopolize the mortgage lending and servicing market, Plaintiff has suffered pecuniary damages in an amount to be determined, along with other pecuniary and non-pecuniary damages.

## CLAIM II
## VIOLATIONS OF THE HAWAII ANTI-TRUST/ANTI-MONOPOLY ACTS

69.   Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

70.   Mortgage lending and servicing in Hawaii is an activity in or affecting interstate commerce, as the parties traffic in personal service to foreigners and rely on foreign goods for their businesses.

71.   The conduct of Defendants as described more fully hereinabove violates the Hawaii Anti-Trust Act, Hawaii Revised Statutes § 480-13, and the Hawaii Monopolization Act, Hawaii Revised Statutes § 480-9.

72.   As a direct and proximate result of the unlawful conduct of Defendants, and each of them, in monopolizing and/or attempting to monopolize the mortgage lending and

servicing market, have suffered pecuniary damages in an amount to be determined, along with other pecuniary and non-pecuniary damages.

## CLAIM III
## VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

73.   Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

74.   As mortgage lenders, defendants are subject to the provisions of the REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA"), 12 USC section 2601 et seq.

75.   In violation of 12 USC section 2607 in connection with the mortgage loan to Plaintiff, Defendants and/or their predecessors in interest violated RESPA by accepting charges for the rendering of real estate services that were in fact charges for other than services actually performed.

76.   As a result of the Defendants, and each of them, violations of RESPA, they are liable to Plaintiff in an amount equal to three times the amount of charges paid by Plaintiff for "settlement services" pursuant to 12 USC section 2607(d)(2).

77.   In violation of RESPA, 12 U.S.C. § 2607, in connection with the mortgage loan to Plaintiff, Defendants violated Home Ownership Equity Protection Act (HOEPA),

which is codified at 15 USC section 1639 et seq., because Defendants misrepresented charges to Plaintiff as real estate services, that in fact, were not services pertaining to real estate.

78.  As a result of the Defendants' violation of HOEPA they are liable to Plaintiff in an amount equal to three times the amount of charges paid by Plaintiff for "settlement services" pursuant to 12 U.S.C. § 2607(d)(2).

79.  Section 3500.6 of RESPA requires lenders to provide a special information booklet at the time of loan application.  Based on information and belief, the Special information booklet was not provided to borrower by Defendants at the time of the loan application.

80.  As a result of the foregoing violations, Defendants, and each of them, are liable to Plaintiff for actual damages, treble damages, and such other damages as the court may award, together with costs of the action and reasonable attorneys' fees.

**CLAIM IV**
**VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT**

81.  Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

82.   In 1994, Congress enacted the Home Ownership
Equity Protection Act (HOEPA) that is codified at 15 U.S.C.
§1639, et seq., with the intention of protecting homeowners
from predatory lending practices targeted at vulnerable
consumers. HOEPA requires lenders to make certain defined
disclosures and prohibits certain terms from being included
in home loans. In the event of noncompliance, HOEPA imposes
civil liability for rescission and statutory and actual
damages.

83.   Plaintiff is a "consumer" and the Defendants are
"creditors" as defined by HOEPA. In the Mortgage loan
transaction at issue here, Plaintiff was required to pay
excessive fees, expenses, and costs.

84.   Pursuant to HOEPA and specifically 15 U.S.C.
section 1639(a)(I), Defendants were required to make
certain disclosures to the Plaintiff which are to be made
conspicuously and in writing no later than three (3) days
prior to closing, including:

> "You are not required to complete this
> agreement merely because you received these
> disclosures or have signed a loan application. If
> you obtain this loan, the lender will have a
> mortgage on your home. You could lose your home
> and any money you put into it, if you do not meet
> your obligations under the loan."

85.   Defendants violated HOEPA with numerous acts and
material omissions, including but not limited to: (a)

failing to make the foregoing disclosure in a conspicuous fashion; and (b) engaging in a pattern and practice of extending credit to Plaintiff without regard to his ability to repay in violation of 15 U.S.C. Section 1639(h).

86.   By virtue of the Defendants' multiple violations of HOEPA, including the sale of a defective product, Plaintiff has a legal right to rescind the consumer credit transaction.

87.   Based on information and belief, Defendants further violated HOEPA by failing to make additional disclosures, including but not limited to Plaintiff not receiving the required disclosure of the right to rescind the transaction.

88.   Based on information and belief, Defendants further violated HOEPA by failing to provide an accurate Truth in Lending (TIL) disclosure.

89.   As a direct consequence of and in connection with Plaintiff's loss of legal and lawful exercise of his right to rescission, wherein the true "lender" is required, within 20 days of this notice of rescission to: (a) Desist from making any claims for finance charges in the transaction; (b) Return all monies paid by Plaintiff's connection with the transaction to the Plaintiff; and (c)

Satisfy all security interests, including mortgages, which were acquired in the transaction.

90.   Upon the true "lenders" full performance of its obligations under HOEPA, Plaintiff shall tender all sums that the true "lender" is entitled.

91.   Based on Defendants' HOEPA violations, including but not limited to defective product issues, each of the Defendants is liable to the Plaintiff for the following, which Plaintiff demand as relief:

    (a)   Rescission of the mortgage loan transactions;

    (b)   Termination of the mortgage and security interest in the property the subject of the mortgage loan documents created in the transaction;

    (c)   Return of any money or property paid by the Plaintiff including all payments and improvement costs made in connection with the transactions;

    (d)   An amount of money equal to twice the finance charge in connection with the transactions; including

    (e)   Relinquishment of the right to retain any proceeds;

    (f)   Actual damages in an amount to be determined at trial; and

    (g)   Attorney's fees.

**CLAIM V**
**VIOLATIONS OF FEDERAL TRUTH-IN-LENDING ACT**

92.   Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

93.   The Truth in Lending Act (TILA), 15 U.S.C. §1605 et seq. and Regulation Z, Section 226.4 requires Defendants to fully and completely disclose the loan terms, the finance charge, the annual percentage rate, the right to rescind, and other consumer rights. These charges and rights were not fully and timely disclosed constituting a violation of TILA.

94.   TILA also requires initial disclosures to be issued within three business days of receipt of the loan application and of any changes to the terms of a loan program. Borrowers are typically entitled to a TILA disclosure concurrently with the RESPA Good Faith Estimate. The purpose of the early TILA disclosure and the RESPA Good Faith Estimate is to give the borrowers an opportunity to review the proposed terms and compare loan terms being offered by other lenders. The documents provided to the borrowers by the lender did not include an initial truth in lending statement or a good-faith estimate constituting a violation of TILA.

95.   Defendants failure to provide the required disclosures provides Plaintiff with the right to rescind

the transaction, and Plaintiff, through this public complaint which is intended to be construed, for purposes of this claim, as a formal notice of rescission as may be applicable in common law and equity, hereby elect to rescind the transaction.

96.   Pursuant to TILA, Defendants are liable to Plaintiff in amounts equal to the sum of actual damages and such additional damages as the court may allow, and the costs of action together with reasonable attorney's fees.

## CLAIM VI
## FRAUDULENT MISREPRESENTATION

97.   Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

98.   Defendants, and each of them, knowingly and intentionally concealed material information from Plaintiff that was required by Federal statutes and regulations to be disclosed to the Plaintiff both before and at the time of closing.

99.   Defendants, and each of them, also materially misrepresented and/or failed to disclose material information to the Plaintiff with full knowledge by defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time

said representations were made and/or were omissions of material fact.

100. The omissions of material fact and/or the material misrepresentation of material facts include but are not limited to, the following:

(a) Concealing the failure to follow usual and customary underwriting guidelines to qualify Plaintiff for a loan;

(b) Misrepresenting and/or concealing the true terms of the loan;

(c) Misrepresenting the ability to refinance the loan at a later date;

(d) Misrepresenting and/or concealing the true amount of interest Plaintiff would have to pay over the life of the loan;

(e) Concealing that property values were declining and would likely continue to do so in the foreseeable future;

(f) Concealing that Plaintiff would likely experience mortgage payment distress and had a high likelihood of defaulting on the Note;

(g) Concealing that there would not be sufficient equity in the Property to refinance the loan;

(h) Concealing any risks or warnings associated with the securitization of the Plaintiff's collateral (the Property);

(i) Concealing that Defendants would wrongfully, improperly, and illegally report negative information as to the plaintiff to one of more credit reporting agencies, resulting in plaintiff having negative information on his credit reports and the lowering of his FICO scores such that they would not be able to qualify in the future to refinance the subject loan.

101. Under the circumstances, the material omissions and the material misrepresentations of the defendants were malicious.

102. Plaintiff, not being an investment banker, securities dealer, or mortgage lender, reasonably relied upon the representations of Defendants in agreeing to execute the mortgage loan documents.

103. Had Plaintiff known of the falsity of Defendants' representations and/or have known of the omissions of material fact, Plaintiff would not have entered into the transaction which is the subject of this action.

104. As a direct and proximate result of the foregoing acts and/or omissions of Defendants, and each of them, Plaintiff is entitled to rescission of the subject Note and Mortgage, and damages in such amounts as shall be proven at the time of trial.

### CLAIM VII
### BREACH OF FIDUCIARY DUTY

105. Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

106. Defendants, and each of them, by their actions in contracting to provide mortgage loan services and a loan program to Plaintiff which was not only to be best suited

to the Plaintiff given his income and expenses but by which Plaintiff would also be able to satisfy his obligations without risk of losing his home, were "fiduciaries" in which Plaintiff reposed trust and confidence, especially given that Plaintiff was not and are not investment bankers, securities dealers, mortgage lenders, mortgage brokers, or mortgage lenders.

107. Defendants, and each of them, breached their fiduciary duties to the Plaintiff by fraudulently inducing Plaintiff to enter into a mortgage transaction that was contrary to the Plaintiff's stated intentions; contrary to the Plaintiff's interests; and contrary to the Plaintiff's preservation of his home.

108. Defendants, or entities with in the enterprise of Defendants, breached their fiduciary duties to the Plaintiff by taking positions in the highly leveraged futures or options market, such interests were in direct opposite of Plaintiff's interests and the general housing market as a whole.

109. As a direct and proximate result of the Defendants and/or their predecessors in interest breaches of their fiduciary duties, Plaintiff is entitled to rescission and damages.

110. Under the totality of the circumstances, the Defendants' actions were willful, wanton, intentional and with the callous and reckless disregard for the rights of the Plaintiff, justifying an award of actual and compensatory damages, exemplary damages and punitive damages to deter future similar conduct of the named Defendants. Further, an award of punitive damages will deter other persons or entities with similar inclinations.

### CLAIM VIII
### UNJUST ENRICHMENT

111. Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

112. Defendants, and each of them, have an implied contract and warranty with Plaintiff to ensure that the Plaintiff understood all fees, rates, payments and charges which would be paid to the Defendants, to obtain credit on Plaintiff's behalf, to not charge any fees which are not related to the settlement of the loan and without full disclosure to Plaintiff and that the loan products together would provide a 30-year mortgage designed specifically with the Plaintiff's known personal financial information required by the Defendants.

113. Defendants, and each of them, cannot, in good conscience and equity, retain the benefits from their actions of charging a higher interest rate, fees, rebates, kickbacks, profits and gains from any resale of mortgages and notes using Plaintiff identities, credit scores, income, appraisal and reputation without consent, right, justification or excuse as part of an illegal enterprise scheme.

114. Defendants, and each of them, have been unjustly enriched at the expense of the Plaintiff, and maintenance of the enrichment would be contrary to the rules and principles of equity.

115. Defendants, and each of them, have also been additionally enriched through the receipt of payment from third parties including, but not limited to, investors, insurers, other borrowers, the United States Department of the Treasury, United States Federal Reserve, and others.

116. Plaintiff thus demands restitution from the Defendants and/or their predecessors or successors in interest in the form of actual damages, exemplary damages, and attorney's fees.

## CLAIM IX
## CIVIL CONSPIRACY

117. Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

118. In connection with the application for and consummation of the mortgage loan which is the subject of this action, Defendants, and each of them, agreed between and among themselves, to engage in actions and a course of conduct designed to further an illegal scheme, or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiff.

119. Defendants, and each of them, agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of, and detriment to, the Plaintiff.

120. The Defendants' acts and/or omissions, were committed intentionally, willfully, wantonly and with reckless disregard for the rights of the Plaintiff.

121. As a direct and proximate result of the actions of the Defendants, and each of them, have resulted in fraud and breaches of fiduciary duties, such that Plaintiff has suffered damages both monetary and physically.

122. Plaintiff thus demands an award of actual, compensatory and punitive damages.

### CLAIM X
### COMPLAINT TO QUIET TITLE

123. Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

124. By means of this Complaint, Plaintiff has given notice to the named, known Defendants.

125. Additional real parties in interest may be the investors of the mortgage-backed security, the insurer through a claim of equitable interest, or some other person or entity yet unknown to Plaintiff at this time.

126. The mortgage backed security is a "securitized" bond-like note deriving its value from the underlying mortgages, of which the Plaintiff's Mortgage is just one. Thus, Plaintiff is entitled to quiet title against Defendants and/or their successors and assigns, which will be identified herein when their identities become known.

127. Plaintiff is informed and believes and thereupon alleges that at all times herein mentioned each of the Defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

128. Plaintiff is informed and believes and thereupon alleges that each of the Defendants claim or may claim an interest in the property adverse to Plaintiffs herein. However, the claim of said defendants are without any right whatsoever, and said defendants have no legal or equitable rights, claim, or interest in said property.

129. Plaintiff, therefore, seeks a declaration that the title to the subject property is vested Plaintiff alone and that the defendants herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that the defendants and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff herein.

130. Wherefore, in this CLAIM, Plaintiff prays this Court will enter judgment against Defendant and each of them, as follows:

    (a)    For an order compelling said Defendant(s), and each of them, to transfer or release legal title and alleged encumbrances thereon and possession of the subject property to Plaintiffs herein;

    (b)    For a declaration and determination that Plaintiffs are the rightful holders of title to the property and the Defendant(s) herein, and each of them, be declared to have no estate, right, title or interest in said property;

(c)   For a judgment forever enjoining said defendants, and each of them, from claiming any estate, right, title or interest in the subject property;

(d)   For costs of suit herein;

(e)   For such other and further relief as the court may deem proper.

## CLAIM XI
## VIOLATION OF HAWAII BUREAU OF CONVEYANCE REGULATIONS
## AS A MORTGAGE SERVICER

131. Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

132. As of July 2010, Defendants, and each of them, as mortgage servicers, are required to register and be licensed with the state of Hawaii pursuant to HRS § 454M[1].

---

[1] **[§454M-6]  Prohibited activities.**  It shall be unlawful for any mortgage servicer in the course of any mortgage loan transaction:

(1)   To misrepresent or conceal material facts, to make false promises, or to pursue a course of misrepresentation through its agents or otherwise;

(2)   To engage in any transaction, practice, or course of business that is not in good faith, does not constitute fair dealing, or that constitutes a fraud upon any person, in connection with the servicing, purchase, or sale of any mortgage loan;

(3)   To fail to comply with the mortgage loan servicing transfer, escrow account administration, or borrower inquiry response requirements imposed by Sections 6 and 10 of the Real Estate Settlement Procedures Act, 12 United States Code Sections 2605 and 2609, and regulations adopted thereunder by the Secretary of Housing and Urban Development; or

No such licensing as required by law can be found.  As
stated throughout the Complaint herein, Defendants have
engaged in numerous unlawful activities in violation of HRS
§ 454M as well as other Hawaii Revised Statute. The
Defendants are subject to the penalties[2] for these and
other violation to be proven at trial.

133. The State of Hawaii administrative rules
"Department of Commerce and Consumer Affairs", Chapter 178,
"administrative special mortgage recording fee guidelines"
requires every transfer of an interest in real property,
except fixtures, made as security for the performance of
another act or subject to defeasance upon the payment of an
obligation, to be properly recorded. The special mortgage
recording fee (SMRF) is a special mortgage recording fee
imposed on each mortgage and each amendment to a mortgage

---

(4)  To fail to comply with applicable federal laws
and regulations related to mortgage servicing. [L 2009, c
106, pt of §1]

**[§454M-9]  Private right of action.**  Nothing in this
chapter shall be construed to preclude any individual or
entity that suffers loss as a result of a violation of this
chapter from maintaining a civil action to recover damages
and, as provided by statute, attorney's fees. [L 2009, c
106, pt of §1]

[2] **[§454M-10]   Penalty.**  Any person who violates any
provision of this chapter may be subject to an
administrative fine of not more than $5,000 for each
violation.

which increases the principal amount of the secured debt.
The SMRF must be filed at the State of Hawaii Bureau of
Conveyances and/or filed with the assistant registrar of
the Land Court of the State of Hawaii.

134. Based on information and belief, the Mortgage and
Note at issue has been traded (sold). Defendants should
have filed a SMRF and an assignment of mortgage for each
assignment of sale in a timely manner.

135. Defendants have sought to foreclose Plaintiff
real Property and receive a distribution from the sale of
Plaintiff property without possessing legally enforceable,
recorded assignment of mortgages from the actual
mortgagees. Under Hawaii law, before an entity would be
entitled to receive a distribution from the sale of real
property, their interest therein must have been recorded.

136. Defendants act of pursuing a foreclosure action
without the requisite legal title, while falsely stating
that it had such title, and while lacking the right to
engage in trust business in Hawaii, constitutes a "false,
deceptive or misleading representation or means" in
connection with the collection of a debt, in violation of
the Federal Fair Debt Collection Procedures Act, 15 U.S.C.
Sec. 1692e.

137. All of the Defendants are "debt collectors" as defined in 15 U.S.C. 1692e, because they regularly use instrumentalities of interstate commerce, and the mails, in attempting to collect, directly, or indirectly, debts owed or due or asserted to be owed or due to another, namely the actual lenders, mortgagors, and certificate-holders under the above-referenced pooling and servicing agreements.

138. Upon information and belief, Defendants failed to establish a complete and legitimate chain of assignment from the originator to the person assigning the Mortgage to Defendant.

139. Failure to file these assignments prohibits Defendants from exercising any judicial procedures against the Plaintiff.

140. As a direct and proximate result of the actions of Defendants, Plaintiff is entitled to possession of the Property, entitled not to be evicted, and are entitled to damages in such amounts as shall be proven at the time of trial.

### CLAIM XII
### MISTAKE

141. Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

142. If the above mentioned wrongful acts and/or
omissions of Defendants were not fraudulent
misrepresentations and/or omissions of material fact, then
the underlying transaction was entered into based upon
mutual mistake which entitles Plaintiff to actual damages
including all fees and costs paid to obtain the loan,
together with other claims in such amounts as shall be
proven at the time of trial.

## CLAIM XIII
## UNCONSCIONABILITY

143. Plaintiff incorporates each and every allegation
contained in the preceding paragraphs of this Complaint as
if fully set forth herein.

144. Plaintiff placed his trust and confidence in
Defendants to make proper and timely disclosures, and
properly qualify them for the loan, provide loan terms that
were in accord with economic conditions existing at the
time, among other things.

145. Plaintiff did not understand the securitized loan
transaction, or the true terms of the Notes and Mortgages,
and were not fully and timely informed of the same by
Defendants who held superior bargaining power over
Plaintiff.

146. As a result of the above, the terms and conditions of the Notes and Mortgages are unconscionable, and Plaintiff is entitled to damages, repayment, reimbursement and/or indemnification of all monies that were paid and other claims in such amounts as shall be proven at the time of trial.

## CLAIM XVI
## UNFAIR AND DECEPTIVE ACTS OR PRACTICES

147. Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

148. The Plaintiff is a "consumer" as that term is defined in HRS § 480-1.

149. The Defendants, and each of them, describe acts and practices involved "trade or commerce" as that term is used in HRS § 480-2(a).

150. An unfair or deceptive act or practice (UDAP) in the conduct of any trade or commerce is unlawful pursuant to HRS § 480-2(a). And certain deceptive trade practices are also unlawful pursuant to HRS §481A-3. In connection with the subject loan, Defendants engaged in UDAPs that violate HRS § 480-2(a) and or 481A-3, including but not limited to:

a.   Targeting financially unsophisticated and otherwise vulnerable consumers for inappropriate credit products;

b.   Failing to adequately disclose the true costs and risks of the subject loan and its/their inappropriateness for Plaintiff;

c.   Failing to disclose that lender approved the subject loan based on financial documents required by Defendants such as Plaintiff's tax returns and pay stubs without regard to Plaintiff ability to sustain the loan with any reasonable means test;

d.   Falsely representing and/or failing to fully and completely disclose the amounts Plaintiff was required to pay;

e.   Making a defective mortgage loan or loans that resulted in little net economic benefit to Plaintiff with the primary objective of generating fees;

f.   Attempting to deprive Plaintiff of time in a fictitious modification process until the statute of limitations passed beyond a time for his legal right for rescission and/or cancel the subject loan.

151. Defendants, and each of them, violated TILA in connection with the subject loan constitute UDAPs in violation of HRS §§ 480-2(a) and/or 48IA-3.

152. The conduct caused Plaintiff to suffer injury to his property, including without limitation wrongfully induced payment of money.

153. Defendants' described acts and practices offend established public policy and/or were immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to

consumers, and were therefore unfair in violation of HRS §
480-2(a).

154. Defendants' described acts and practices involved
material representations, omissions or practices that were
likely to mislead consumers acting reasonably under the
circumstances, and were therefore deceptive in violation of
HRS §§ 480-2(a), 481A-3 and/or 454M.

155. Pursuant to HRS § 480-12, a contract or agreement
in violation of HRS Chapter 480 is void and is not
enforceable at law or in equity.

156. Pursuant to HRS § 480-13(b)(1), a consumer who is
injured by a UDAP is entitled, for each UDAP, to be awarded
a sum not less than $1,000 or threefold any damages he or
she sustained, whichever sum is the greater, and reasonable
attorney's fees together with the costs of suit.

157. As a result of the wrongful acts and/or omissions
of Defendants, Plaintiff is entitled to various remedies
including, but not limited to, rescission, consideration,
reimbursement, equitable recoupment, indemnification,
damages (statutory, actual and treble damages), attorneys'
fees and costs, and injunctive relief.

**CLAIM XV**
**FAILURE TO ACT IN GOOD FAITH**

158. Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

159. Defendants, and each of them, owed Plaintiff a fiduciary duty to deal with them in good faith and in a fair manner.

160. Defendants, and each of them, failed to deal with Plaintiff in good faith and in a fair manner by making various misrepresentations of material fact and/or omissions of material fact, not making the mandatory federal law disclosures, not providing loan relief and/or modification of loan terms so Plaintiff could maintain his interest in the Property, including but not limited to, failing to disclose that Plaintiff was not financially qualified for the loan, and/or the likelihood of the value of the Property was less than the appraised value, and, that Plaintiff was likely to default and lose his home to foreclosure.

161. Plaintiff suffering various injuries and damages in such amounts as shall be proven at the time of trial.

162. As a result of the wrongful acts and/or omissions of Defendants, and each of them, Plaintiff is entitled to various remedies including, but not limited to, rescission, reimbursement, equitable recoupment, indemnification,

damages (statutory, actual, punitive, and treble damages), attorney's fees and costs, and injunctive relief.

## CLAIM XVI
### RECOUPMENT

163. Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

164. As a result of the various wrongful acts and/or omissions made by Defendants, and each of them, Plaintiff is entitled to equitable recoupment of all monies paid by them with regard to the subject loan transaction, including all broker's fees and commissions, closing costs, all other fees, costs and expenses, interest and principal payments, improvements that were made, and the loss of the value of his investment in the Property.

## CLAIM XVII
### NEGLIGENT AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

165. Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

166. Defendants and/or their predecessors in interest owed Plaintiff a fiduciary duty to avoid negligently and/or intentionally inflicting severe mental and emotional distress upon Plaintiff.

167. Defendants, and each of them, breached their duties by causing Plaintiff to suffer severe mental and emotional distress, by misleading them, providing a loan product they were not properly qualified for, in causing them to lose her savings, by giving them false hope they would qualify for a refinance and/or loan modification, and/or that they would be given loan assistance on reasonable terms that would allow Plaintiff the right to keep his home, and whereby Plaintiff have been unable to sleep, eat, or carry on normal marital relations due to the stress caused by Defendants.

168. The wrongful acts and/or omissions of Defendants and/or their predecessors in interest were a substantial factor and/or proximate cause of Plaintiff's suffering injuries and damages in such amounts as shall be proven at the time of trial.

169. As a result of the wrongful acts and/or omissions of Defendants, and each of them, Plaintiff is entitled to various remedies including, but not limited to, rescission, reimbursement, equitable recoupment, indemnification, damages (statutory, actual, punitive and/or treble damages), attorneys' fees and costs, and injunctive relief.

## CLAIM XVIII

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

170. Plaintiff incorporates each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

171. The Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p as amended by Pub. L. 109-351, Sections 801-02, 120 Stat. 1966 (2006), Section 809 requires among other things, that within five days after the initial communication with the consumer in connection with the collection of any debt, the debt collector shall send the consumer written notice containing the amount of the debt, the name of the creditor, and that the consumer may dispute the debt within 30 days, and if the consumer notifies the debt collector that the debt or any portion thereof is disputed, it shall cease collection of the debt until it verifies the debt or the name and address of the original creditor and this is mailed to the consumer.

172. Based on understanding and belief, Defendants, and each of them, failed to give Plaintiff the required notice and opportunity to contest the debt and request verification of the same.  Defendants' failure to give the

required notice voids and invalidates any foreclosure

action conducted with regard to the subject property.

173. Pursuant to section 813, Defendants and/or their

predecessors in interest are liable to Plaintiff in amount

equal to the sum of actual damages and such additional

damages as the court may allow, and the costs of action

together with reasonable attorney's fees.

## CLAIM IXX
## INTENTIONAL OR NEGLIGENT FAILURE TO WARN OF DEFECTIVE PRODUCT

174. Plaintiff incorporates each and every allegation

contained in the preceding paragraphs of this Complaint as

if fully set forth herein.

175. Defendants, and each of them, and/or their

predecessors interest intentionally or negligently failed

to warn Plaintiff of the risks associated with their loan

products, which at all times relevant herein were known to

be defective and/or high-risk products, as evidenced by the

voluminous warnings contained within the Trust Prospectus,

which was provided to the would-be investors of the pools

of mortgages, but which warnings were never provided to the

Plaintiff.

176. The loan that the Plaintiff was enticed into

purchasing was a defective product, exposing the Plaintiff,

and others similarly situated, to a high risk of financial damage, including bankruptcy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a Judgment against Defendants, as follows:

1.   For a judgment in favor of the Plaintiff.

2.   For a judgment awarding statutory damages in such amounts as shall be shown at the time of trial.

3.   For a judgment awarding actual damages in such amounts as shall be proven at the time of trial.

4.   For a judgment awarding treble damages.

5.   For a judgment awarding punitive damages in such amounts as shall be proven at the time of trial.

6.   For a Temporary Restraining Order or Order for Injunctive Relief.

7.   For a judgment of rescission, recoupment, reimbursement and/or indemnification in such amounts as shall be proven at the time of trial.

8.   For such other and further relief as the Court deems just and equitable in the premises.

## DEMAND FOR JURY TRIAL

Plaintiff, and each of them, hereby demand trial by jury on all issues triable by right to a jury.

Dated this 7th day of January, 2011, at Wailuku,

Hawaii.

> IVEY FOSBINDER FOSBINDER LLLC
> A LIMITED LIABILITY LAW COMPANY
>
> _____
> JAMES H. FOSBINDER
> *Attorney for Plaintiff*

James H. Fosbinder #7070
IVEY FOSBINDER FOSBINDER LLLC
A LIMITED LIABILITY LAW COMPANY
1883 Mill Street
Wailuku, Hawaii  96793
Telephone:  (808)242-4956
Facsimile: (808)249-0668
Email: jfosbinder@iff-law.com

Attorneys for Plaintiff
RICHARD LEONARD RADFORD

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RICHARD LEONARD RADFORD;   )<br>                    )<br>       Plaintiff,    )<br>                    )<br>                    )<br>vs.               )<br>                    )<br>LONG BEACH MORTGAGE COMPANY;  )<br>LONG BEACH SECURITIES CORP.;  )<br>DEUTSCHE BANK NATIONAL TRUST  )<br>COMPANY, as Trustee for Long  )<br>Beach Mortgage Loan Trust 2006- )<br>WL1; WASHINGTON MUTUAL, now   )<br>known as J.P. MORGAN CHASE BANK )<br>NATIONAL ASSOCIATION; J.P.    )<br>MORGAN CHASE BANK NATIONAL    )<br>ASSOCIATION; and JOHN DOES 1-  )<br>50, inclusive;           )<br>                    )<br>       Defendants. | CIVIL NO.: _____<br><br>**SUMMONS** |

---

### SUMMONS

TO:  LONG BEACH MORTGAGE COMPANY

     LONG BEACH SECURITIES CORP.

     DEUTSCHE BANK NATIONAL TRUST COMPANY,
     as Trustee for Long Beach Mortgage Loan Trust 2006-WL!

WASHINGTON MUTUAL BANK, now known as J.P. Morgan Chase Bank National Association

J.P. MORGAN CHASE BANK NATIONAL ASSOCIATION

JOHN DOES 1-50

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you receive it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed.R.Civ.P. 12(a)(2) or (3) — you must serve on the Plaintiffs an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the Plaintiffs or the Plaintiffs' attorney whose name and address is:

JAMES H. FOSBINDER, ESQ.
IVEY FOSBINDER FOSBINDER LLLC
A Limited Liability Law Company
1883 Mill Street
Wailuku, Hawaii 96793
Phone: (808) 242-4956
Fax: (808-249-0668

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Dated: Honolulu, Hawaii _____ JAN 10 2011

Signature of Clerk or ~~Deputy Clerk~~

Deputy Clerk, United States
District Court, District of Hawaii